UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No. 12bk49658 |
| Elk Grove Village Petroleum, *et al.* | ) |
| | ) Chapter 11 |
| Debtors. | ) |
| | ) Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The matter before the court is the Motion for Allowance of Secured Claim and Turnover of Collateral Proceeds (the "UCB Motion"), brought by United Central Bank ("UCB"), and the Cross Motion for Partial Turnover of Proceeds of Sales (the "IDOR Motion" and together with the UCB Motion, the "Motions"), brought by the Illinois Department of Revenue ("IDOR"). Upon a review of the parties' respective filings and after holding a hearing on the matter, the court finds that UCB is entitled to a claim secured in the proceeds of the sale, in excess of the amount of the proceeds. IDOR has secured, priority unsecured and general unsecured claims, all of which are lower in priority to UCB's secured claim. IDOR's right to assert transferee liability is an "interest" for purposes of a section 363(f) sale, potentially entitling IDOR to adequate protection under section 363(e). As IDOR's interest is, however, subordinate to that of UCB's, there is no harm from which IDOR is entitled to protection.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). Proceedings arising with respect to sales held pursuant to section 363 of the Bankruptcy Code are matters arising in a bankruptcy case, in which the bankruptcy court is empowered to enter orders. *Directional Int'l, Ltd. v. Illinois Bell Telephone Co. (In re Personal Computer Network, Inc.)*, 97 B.R. 909, 912 (N.D. Ill. 1989).

PROCEDURAL HISTORY

In considering the Motions, the court has considered the arguments of the parties at the April 30, 2014 hearing on the Motions, and has reviewed and considered the following filed documents in the bankruptcy case:

(1) Order Approving Sale of Gas Stations [Docket No. 191] (the "Sale Order");

(2) Motion of United Central Bank for Allowance of Secured Claim and Turnover of Collateral Proceeds [Docket No. 205];

(3) Objection of Illinois Department of Revenue to Motion of United Central Bank for Allowance of Secured Claim and Turnover of Collateral Proceeds [Docket No. 232];

(4) Cross-Motion Of Illinois Department of Revenue for Partial Turnover of Proceeds of Sales [Docket No. 233];

(5) Trustee's Response to Cross-Motion of Illinois Department of Revenue's Motion for Partial Turnover of Proceeds of Sales [Docket No. 237];

(6) United Central Bank's Response In Opposition to the Cross Motion of Illinois Department of Revenue for Partial Turnover of Proceeds of Sale and Reply in Support of Motion of United Central Bank of Allowance of Secured Claim and Turnover of Collateral Proceeds [Docket No. 239];

(7) Reply of Illinois Department of Revenue to Responses of United Central Bank and the Chapter 11 Trustee to Cross-Motion for Partial Turnover of Proceeds of Sale [Docket No. 244]; and

(8) Supplemental Exhibit to Motion of United Central Bank for Allowance of Secured Claim and Turnover of Collateral Proceeds [Docket No. 256].

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 1989) (Goldgar, J.) (authorizing a bankruptcy court to take judicial notice of its own docket).

BACKGROUND

The matter before the court arises out of the post-petition sale (the "Sale") of substantially all the assets of jointly administered chapter 11 bankruptcy estates for debtors Elk Grove Village Petroleum, LLC ("Elk Grove"), Joliet Petroleum, LLC ("Joliet"), Oswego Petroleum, LLC ("Oswego") and Orland Park Petroleum, LLC ("Orland Park", and collectively with Elk Grove, Joliet and Oswego, the "Debtors").

Prior to the Sale, the Debtors in these cases collectively owned and operated five gas stations in the greater Chicago area. In the course of business, the Debtors entered into various loan agreements with UCB as lender, which were secured by mortgages on the real properties upon which the gas stations operate as well as security interests in the Debtors' personal property. The Debtors subsequently defaulted on their obligations to UCB.

UCB asserts that it is thereby owed not less than $14,077,157.67 and that the security for its claims extends to all of the assets of the Debtors and thus the proceeds of the Sale. No party challenges the nature, validity or extent of UCB's interests or has objected to UCB's claims.

UCB was not, however, the only creditor the Debtors failed to pay. In operating the business, the Debtors also failed to pay a variety of taxes to the State of Illinois. In that regard, IDOR has filed claims for unpaid pre-petition taxes totaling approximately $1.8 million: $1,387,418.93 as secured debt, $419,718.38 as priority unsecured debt and $74,511.29 as general unsecured debt. No party has objected to IDOR's claims.

After commencing the bankruptcy cases, the Debtors' performance on its monetary and other obligations did not improve. As a result of those and other failures, on request of UCB, the court appointed Eugene Crane as chapter 11 trustee (the "Trustee") on April 12, 2013.

On August 13, 2013, the Trustee moved for the sale of the Debtors' gas stations free and clear of liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code. Among the objections received was one from IDOR, wherein IDOR asserted its claims and requested adequate protection under section 363(e) of the Bankruptcy Code. In particular, IDOR claimed that, as its state law right to assess its claims against a purchaser under transferee liability was being impaired by the sale, it was entitled to protection of that interest.

On November 13, 2013, after having conducted a hearing on the matter, the court entered the Sale Order. The Sale Order authorized the sale of the Debtors' gas stations "free and clear of liens, claims, encumbrances and interests, with all liens, claims, encumbrances and interests to attach to the proceeds." The Sale Order further provided that the Trustee would hold the proceeds of the sale, pending further order of the court. The Trustee has since closed the Sale and is holding net proceeds totaling $4,991,736.13 with respect to the real property and $237,739.14 with respect to inventory for a total of $5,229,475.27.

The UCB Motion and the IDOR Motion renew the questions of whether IDOR has an "interest" that is affected by a sale under section 363(f), and if so, whether and to what extent IDOR is entitled to adequate protection of this interest under section 363(e).

DISCUSSION

The matter before the court is one of apparent first impression in this court, at least insofar as it posits how to adequately protect an objecting creditor whose right to assert transferee liability is being stripped in a sale under section 363.

Putting aside the question of adequate protection for the moment, however, the initial question presented in the UCB Motion is whether, to what extent and in what nature and priority UCB's claims should be allowed. The initial question presented in the IDOR Motion is the same,

except with respect to IDOR's claims. The court will consider each of these initial questions, in turn.

A. <u>The Nature, Extent and Priority of the UCB and IDOR Claims</u>

Though never expressly stated in the Bankruptcy Code, the highest priority claim in bankruptcy – but for extraordinary relief such as that available under section 506(c) – is that afforded a secured claim. Bankruptcy is essentially an *in personam* mechanism, severing the individual's liability on debts through the process of discharge. *In rem* rights, however, are generally unaffected. *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) (a bankruptcy discharge "extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*.").

Below the level of secured claims, section 507 of the Bankruptcy Code governs the priority of unsecured claims in bankruptcy.

As to secured claims of equal priority, the Bankruptcy Code provides no guidance as what relative priority such claims should be afforded as against each other. That question is answered by state law. So, for example, if two creditors both have secured claims, it is state law that will dictate which of these claims has a higher priority.

With that in mind, the court first considers UCB's claims, then IDOR's claims.

a. UCB's Claims

The UCB Motion requests allowance of its claims against the Debtors (the "<u>UCB Claims</u>") as secured in the gross amount of $14,077,157.67. UCB has not asserted its claims except through the UCB Motion, but UCB, as a putatively secured creditor, is not required to assert a claim at all. *See In re Strong*, 203 B.R. 105, 111-12 (Bankr. N.D. Ill. 1996) (Squires, J.). All affected parties appear to have received notice of the UCB Motion.

In addition, UCB was scheduled by the Debtors as holding secured claims for all listed properties and was not scheduled as having a disputed, contingent, or unliquidated claim. The UCB Claims do not differ materially from the amounts scheduled by the Debtors on their schedule of liabilities, and the Debtors' schedules constitute *prima facie* evidence of the validity and amount of the UCB Claims. Fed. R. Bankr. P. 3003(b). Pursuant to section 502(a), a claim is deemed allowed unless a party in interest objects, 11 U.S.C. § 502(a), and no objections have been filed.[1]

As such, the court considers the UCB Claims as having been properly asserted.

UCB requests allowance of its claims as secured in the amount of $3,089,041.59 against Elk Grove, $2,793,967.50 against Oswego, $6,703,581.27 against Joliet, and $1,490,567.31 against Orland.

---

[1] As discussed below, the court considers the IDOR Motion as an objection to the relative priority of payment of the UCB Claim. It is, nonetheless, expressly not an objection to the UCB Claims themselves, or the secured status of the UCB Claims. *See* IDOR's Obj. to UCB's Mot., 3.

4

Section 506(a) of the Bankruptcy Code provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a). Section 552 of the Bankruptcy Code further provides that if a security agreement entered into with debtor prior to the bankruptcy filing extends to property of debtor acquired before the commencement of the case and proceeds, products, offspring, or profits of such property, then the security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case. 11 U.S.C. § 552.

In support of the allegation that its claims are secured, UCB offers a series of mortgages with respect to the real property and UCC-1 financing statements/continuation statements with respect to the personal property held by each Debtor, as well as the various agreements and documentation underlying each. In the court's determination, these documents adequately establish that UCB had liens in all of the assets sold pursuant to the Sale.

Because the Trustee recovered proceeds less than the amounts claimed by UCB, the court concludes that the UCB Claims are secured as against all of the assets having been sold, and thereby, by operation of the Sale Order, as against all of the proceeds of the Sale.

Therefore, UCB's secured claims against the Debtors are deemed allowed under section 502(a) in the total amount of $14,077,157.67, secured in the proceeds of the Sale. The question of which portions of the UCB Claims are secured and which are unsecured, depends however on the court's consideration of the IDOR claims.

b.   IDOR's Claims

The IDOR Motion requests allowance of its claims against the Debtors (the "IDOR Claim") in the gross amount of $1,881,648.60.[2] IDOR asserts that its claims are priority claims under Illinois law, specifically section 902(d) of the Illinois Income Tax Act, 35 ILCS 5/902 (the "Income Tax Act") and section 5j of the Retailers Occupation Tax Act, 35 ILCS 120/5j (the "Bulk Sale Act" and collectively with the Income Tax Act, the "Acts").

While the Bankruptcy Code itself, as noted above, establishes the relative priorities of classes of claims, IDOR's contention deserves consideration. If state law affords a creditor an interest in property, bankruptcy law respects that right unless a federal interest requires a separate result. *Butner v. United States*, 440 U.S. 48, 55 (1979); *Sullivan v. Glenn (In re Glenn)*, 502 B.R. 516, 542 (Bankr. N.D. Ill. 2013) (Barnes, J).

The Acts are essentially the same. They each provide a mechanism by which the State of Illinois may demand payment of taxes from a seller of assets and if those taxes are not paid, assert the same claim personally against the buyer. This mechanism unquestionably constitutes a claim under Bankruptcy Code's definition. 11 U.S.C. § 101(5) (defining "claim" as "a right to payment,

---

[2]   IDOR has filed claims in each of the cases which are substantially the same as those asserted in IDOR's motion. As no party has objected to IDOR's claims as set forth in its proof of claims or its motion, they are deemed allowed. *See* 11 U.S.C. § 502(a).

5

whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured").

The parties agree that the taxes in question were not paid as a part of the sales transaction. As such, IDOR unquestionably has at least general unsecured claims. The question, however, is whether the Acts permit IDOR to assert anything other than unsecured claims. There is no case law on point as to this question.[3]

The Acts themselves, however, answer this question. The Acts make it clear that a claim thereunder is for personal liability, and nothing in the operative provisions of the Acts affords these claims either secured status or priority over other claims.[4] As such, the Acts provide IDOR nothing other than an unsecured claim, first as against the seller, and then as against both the seller and the purchaser should seller not pay.

This is not to say that IDOR is not entitled to claim a lien, however. It simply means that noncompliance with the Acts itself does not automatically afford IDOR a status as anything other than an unsecured creditor. IDOR may assert a lien pursuant to other provisions of the Acts, but only under the procedures set forth therein. 35 ILCS 5/1101; 35 ILCS 120/5a.[5] The Acts confirm that a buyer will be subject to such liens. *See, e.g.*, 35 ILCS 120/5j ("Any person who shall acquire any property or rights thereto which, at the time of such acquisition, is subject to a valid lien in favor of the Department shall be personally liable to the Department for a sum equal to the amount of taxes secured by such lien but not to exceed the reasonable value of such property acquired by him.").

IDOR does in fact claim liens under these provisions, but only for a portion of its total claim. The IDOR Motion provides documentation of tax liens against the Debtors' real and personal property in Will and Cook County in the amount of $1,387,418.93. IDOR has provided documentation in the IDOR Motion that certain of its claims do have recorded liens associated with them. IDOR asserts that those liens (the "Will and Cook County Tax Liens") extend to both the real and personal property of the Debtors, and the court has no reason to question that assertion. No party has challenged the extent or validity of the Will and Cook County Tax Liens.

---

[3]    With respect to the Bulk Sales Act, the Seventh Circuit has delineated the right of parties with respect to funds held under section 5j in response to a stop order issued thereunder in two seminal cases. *See, e.g., Hoornstra v. U.S.*, 969 F.2d 530, 532-34 (7th Cir. 1992); *Bjork v. U.S.*, 486 F.2d 934, 937-39 (7th Cir. 1973). The funds in question here are not held in response to a stop order, however, and therefore these cases are inapplicable on the issue presented.

[4]    To be clear, the State may issue a stop order for transactions whereby funds from a sale transaction are required to be escrowed. The Acts provide, however, that failure to escrow the funds will result in the State asserting the claim against the seller and the buyer personally. Failure to comply with the stop order appears to do nothing other than afford the State the ability to reassert the personal liability claim, a general unsecured claim.

[5]    While these Acts provide that an interest in a tax debtor's property arises immediately upon the assessment of the taxes, the Acts further provide that such interest is not perfected against the debtor until a tax lien is filed. 35 ILCS 5/1101; 35 ILCS 5/1103.

As such and in accordance with the Sale Order, the court concludes that IDOR has valid liens in the amount of $1,387,418.93 as against the proceeds of the Sale. Otherwise, the IDOR claims are unsecured.

        c.       The Relative Priority of the UCB Claims and the IDOR Claims

As noted above, UCB has sufficiently demonstrated that it has valid liens in the assets of the Debtors in the gross amount of $14,077,157.67. Those liens were first recorded and/or filed in 2006, and UCB has sufficiently demonstrated that the liens have been continuously perfected since that time.

On the other hand, the IDOR Motion demonstrates that the Will and Cook County Tax Liens were first recorded in 2010 (and some later in 2011).

As noted above, with respect to like claims, state law establishes the priority of those claims. Illinois law provides no higher priority of tax liens over other types of liens. 35 ILCS 5/1103(a) ("Nothing in this Section shall be construed to give the Department a preference over the rights of any *bona fide* purchaser, holder of a security interest, mechanics lienholder, mortgagee, or judgment lien creditor arising prior to the filing of a regular notice of lien ...."); 35 ILCS 120/5a (same). As such, Illinois law is consistent with the majority of other states, providing that liens are prioritized in relative priority of date of perfection, with the first in time being afforded the first right to the underlying assets. *Cf.* UCC § 9-322(a)(1) ("Conflicting perfected security interests ... rank according to priority in time of filing or perfection."); 810 ILCS 5/9-322(a)(1) (same). As the Will and Cook County Tax Liens were recorded after the UCB Claims were secured and perfected and the UCB Claims' perfection have been continuously maintained, the Will and Cook County Tax Liens are second in priority with respect to the subject assets.

The information provided with respect to the Sale provides that the proceeds of the assets in Will and Cook County are insufficient to satisfy UCB's secured claim with respect thereto. As a result, the Will and Cook County Tax Liens are not entitled to payment of proceeds from the Sale.

Further, while some if not all of IDOR's unsecured claims, as pre-petition tax claims, are entitled to claim a priority under section 507(a)(8) of the Bankruptcy Code, 11 U.S.C. § 507(a)(8), such priority unsecured and general unsecured claims are behind secured claims in priority, and these claims fare no better than IDOR's secured claims.

For these reasons, absent extraordinary relief under section 363(e), both the UCB Claims and the IDOR Claims will be allowed as follows:

    (1) UCB's Claims are, as noted above, allowed in the gross amount of $14,077,157.67.

    (2) Of UCB's Claims, $5,229,475.27 is secured and $8,847,682.40 is generally unsecured.

    (3) IDOR's Claims are allowed in the amount of $1,881,648.60 consisting of priority and general unsecured claims.

It is therefore the court's determination that — absent some extraordinary intervention in the form of section 363(e) relief, the UCB Claims must be paid first out of the proceeds of the Sale.

B.  <u>Adequate Protection of IDOR's Interest under Section 363</u>

The foregoing begs the question that makes this matter one of first impression in this court: To what extent does the adequate protection afforded under section 363(e) apply, and what different result, if any, does such application dictate with respect to the allowance and/or priority of the parties' claims? To consider this question, the court must first address the gating question: Whether IDOR has an "interest" for the purposes of sections 363(e) and 363(f).

The court will consider each subsection of section 363 in turn.

a.  IDOR Has an "Interest" in the Sold Properties for Purposes of Section 363(f)

Section 363(f) of the Bankruptcy Code provides that "[t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any *interest* in such property of an entity other than the estate ...." 11 U.S.C. § 363(f) (emphasis added).[6]

While the Bankruptcy Code does not define the term "interest" as used in section 363(f), courts have generally concluded that the term should be applied broadly. *See Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir. 2003) (holding that a possessory interest by a lessee is an "interest" for purposes of section 363(f)); *see also In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3rd Cir. 2003) (concluding that employment-related claims are an "interest"); *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 586-87 (4th Cir. 1996) (holding that employer-sponsored benefit plans are an "interest"). As the Seventh Circuit has stated, "the Code itself does not suggest that 'interest' should be understood in a special or narrow sense; on the contrary, the use of the term 'any' counsels in favor of a broad interpretation." *Precision Indus.*, 327 F.3d at 545 (*citing United States v. Gonzales*, 520 U.S. 1, 5 (1997)). Other courts within this circuit have also found an "interest" to include claims that flow from the ownership of property. *See Pusser's (2001) Ltd. V. HMX, LLC*, No. 11-C-4659, 2012 WL 1068756, at *10 (N.D. Ill. Mar. 28, 2012) (concluding that a trademark is an "interest" under section 363(f)); *Faulkner v. Bethlehem Steel Intern. Steel Group*, No. 2:04-CV-34 PS, 2005 WL 1172748, at *3 (N.D. Ind. Apr. 27, 2005) (finding that an employment discrimination claim is an "interest" for purposes of section 363(f)).

Judge Lynch of this court has recently addressed this threshold question. *In re Vista Marketing Group Ltd.*, Case No. 12–B–83168, 2014 WL 1330112, at *1-2 (Bankr. N.D. Ill. Mar. 28, 2014). He was confronted, after the sale of gasoline stations under section 363 of the Bankruptcy Code, with the question of whether IDOR's ability under the Acts to assert liability against a purchaser is an interest. Judge Lynch analyzed many of the same cases cited by the parties here and concluded that that the liability of the purchaser for the seller's unpaid taxes is an obligation that "flows from the ownership of property." *Id.* at *6 (citation omitted). As such, Judge Lynch concluded that IDOR's attempt to enforce liability against the purchaser was a violation of the court's sale of assets free and clear under section 363(f). *Id.* at *8-9.

---

[6]  Section 363(f) further provides that such a free and clear sale may only occur if one of five conditions has been met. *See id.* The parties do not appear to dispute that such a free and clear sale was appropriate here, and as such, no analysis of these provisions is required.

8

This court agrees.

IDOR's ability to assert a claim against the purchaser outside of bankruptcy is, at the very least, an inchoate interest in the assets in question, as it would not be assertable against the purchaser had the transfer of the assets not occurred. It is therefore an interest within the meaning of section 363(f). The Sale Order thus had the effect of selling the assets free and clear of this interest, and IDOR may not pursue the buyer under the Acts. *Id.*; *see also Fogel v. Zell*, 211 F.3d 955, 965 (7th Cir. 2000).

  b.  IDOR Has an "Interest" in the Sold Properties for Purposes of Section 363(e)

Given that IDOR's ability to assert a claim against a purchaser of the estate's assets is an interest for purposes of a section 363(f), the court must now consider whether that interest is entitled to adequate protection under section 363(e).

Section 363(e) provides that:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, *the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.* This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

11 U.S.C. § 363(e) (emphasis added).

As is the case with section 363(f), section 363(e) does not define interest. Given that sections 363(f) and 363(e) appear to work hand-in-hand, and given that there appears no principled reason to define interest differently in these two subsections, it is axiomatic that IDOR's interest is an interest for the purposes of section 363(e).

  c.  Adequate Protection of IDOR's Interest under Section 363(e)

It is the court's conclusion above that IDOR has an interest within the meaning of section 363(e) of the Bankruptcy Code. That is not, however, the end of the court's inquiry with respect to treatment of IDOR's interest, but the beginning. In addition to not providing a definition of interest, section 363(e) also does not define adequate protection. The court turns, therefore, to section 361 of the Bankruptcy Code, which states that:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> > (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

>   (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
>   (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

"Adequate protection, as defined in the Bankruptcy Code, was intended by Congress to prevent, during the pendency of a bankruptcy case, against a loss in the value of a secured creditor's interest in property of the bankruptcy estate." *In re Bovino*, 496 B.R. 492, 502 (Bankr. N.D. Ill. 2013) (Barnes, J.) (*citing United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370-71 (1988)); *In re Markos Gurnee P'ship*, 252 B.R. 712, 716 (Bankr. N.D. Ill. 1997) (Wedoff, J.).

IDOR argues that it is entitled to the Sale proceeds as the "indubitable equivalent" of its interest in the sold assets. *See In re River Road Partners*, 651 F.3d 642, 650 (7th Cir. 2011) (stating that although not addressed by the Code or courts, "indubitable equivalent" is the face value of the secured asset if a creditor's claim is oversecured or the current value of the asset if the creditor's claim is undersecured). It asserts that this determination must be made under state law. Under state law, IDOR argues it has a superior interest in the proceeds as it would be able to assess a bulk sales tax if the properties were sold outside of bankruptcy.

The court does not disagree with the first two of these three contentions. For the indubitable equivalent of IDOR's claim to have value, however, the third contention must also be true – that IDOR has a superior interest in the proceeds – but that is not the case, as was determined above.

To the contrary, the court has concluded that such a claim would be subject to the established priority scheme for security interests. As UCB possesses "first in time" mortgages and security interests in the assets sold and thus a secured interest in the proceeds of the Sale, IDOR's interest, to the extent it is entitled to be treated as secured, would fall behind UCB's. IDOR's right as priority unsecured creditor and general unsecured creditor is also behind UCB's secured claim in priority. As UCB's Claims are, in fact, first in all of the proceeds of the Sale and for more than those proceeds, IDOR's secured, priority unsecured and general unsecured claims are all "out of the money."

IDOR has not alleged a decrease in the value of its "interest" and the court cannot find one. It is true that IDOR has lost something in the Sale, the ability to pursue the third party purchaser. But that is a right that all secured creditors whose liens are not released generally have. UCC § 9-201(a) ("Except as otherwise provided in the Uniform Commercial Code, a security agreement is effective according to its terms ... against purchasers of the collateral ...."); 810 ILCS 5/9-201(a) (same); *see also* UCC § 9-315(a) ("Except as otherwise provided in this article and in Section 2-403(2): (1) a security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the

security interest or agricultural lien ...."); 810 ILCS 5/9-201(a) (same). That right is, therefore, subordinate to UCB's secured claims both before and after the Sale.

IDOR was out of the money prior to the Sale and would remain out of the money subsequent to the Sale, whether or not section 363(f) is applied. Though IDOR has under section 363(f) lost an avenue of pursuing its claim, that avenue was without value. It has not experienced or been threatened with a loss for which adequate protection under section 363(e) must or should be afforded. *Timbers of Inwood,* 484 U.S. at 370-71; *Bovino,* 496 B.R. at 502.

IDOR is therefore not entitled to adequate protection under section 363(e), and its claim to a priority of payment out of the proceeds of the Sale must fail.

## CONCLUSION

For the foregoing reasons, the court concludes that the UCB Motion should and will be GRANTED and that the IDOR Motion must and will be DENIED. Separate orders resolving each of the Motions and to that effect will be issued concurrent with this Memorandum Decision.

Dated: May 21, 2014

ENTERED:

_____
Timothy A. Barnes
United States Bankruptcy Judge