UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                                             )
                                                   )    Case No. 12bk49658
Elk Grove Village Petroleum, LLC, *et al.*         )
                                                   )    Chapter 7
    Debtors.                                       )
                                                   )    Judge Timothy A. Barnes
                                                   )

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

The limited issue before the court arises after the appeal of this court's Order Granting Motion of United Central Bank for Allowance of Secured Claim and Turnover of Collateral Proceeds [Dkt. No. 271] (the "UCB Order") and Order [Dkt. No. 268] (the "IDOR Order"), each implementing in part this court's Memorandum Decision [Dkt. No. 267] (the "Proceeds Opinion").[1] The Proceeds Opinion resolved two competing motions:

(1) The Motion of United Central Bank for Allowance of Secured Claim and Turnover of Collateral Proceeds [Dkt. No. 205] (the "UCB Motion") brought by United Central Bank ("UCB");[2] and

(2) The Cross Motion of Illinois Department of Revenue for Partial Turnover of Proceeds of Sales [Dkt. No. 233] (the "IDOR Motion" and together with the UCB Motion, the "Motions") brought by the Illinois Department of Revenue ("IDOR").

Together, the Motions sought resolution of competing claims against proceeds of the sale of the assets under 11 U.S.C. § 363(f) (the "Sale") of Elk Grove Village Petroleum, LLC ("Elk Grove"), Joliet Petroleum, LLC ("Joliet"), Oswego Petroleum, LLC ("Oswego") and Orland Park Petroleum, LLC ("Orland Park", and collectively with Elk Grove, Joliet and Oswego, the "Debtors") to PAV2, LLC (the "Purchaser").

IDOR timely appealed both the IDOR Order and the UCB Order and, on appeal, the District Court for the Northern District of Illinois (the "District Court") agreed with this court's determinations in the Proceeds Opinion in all respects but one.[3] The District Court found that this

---

[1] *In re Elk Grove Vill. Petroleum*, 510 B.R. 594 (Bankr. N.D. Ill. 2014) (Barnes, J.) (for citation purposes, "Elk Grove").

[2] Now known as Hanmi Bank ("Hanmi"). Unless otherwise noted herein, reference to UCB and Hanmi are interchangeable.

[3] *Illinois Dep't of Revenue v. Elk Grove Vill. Petroleum, LLC*, 541 B.R. 673 (N.D. Ill. 2015) (resolving the issues appealed) ("Elk Grove I") and *Illinois Dep't of Revenue v. Elk Grove Vill. Petroleum, LLC*, Case No. 14 C 5072, 2015 WL 8481961 (N.D. Ill. Dec. 9, 2015) (resolving the motions to reconsider) ("Elk Grove II" and together with Elk Grove I, the "District Court Opinions").

court had not fully determined one issue—what value, if any, IDOR was entitled to by way of adequate protection of its extinguished right to pursue the Purchaser personally for unpaid taxes under 35 ILCS 5/902(d) (the "Illinois Income Tax Act") and 35 ILCS 129/5j (the "Retailers' Occupation Tax Act" and together with the Illinois Income Tax Act, the "Bulk Sales Acts").[4] The District Court therefore remanded the matter to this court for further proceedings consistent the District Court Opinions. In all other respects, the Proceeds Opinion, the UCB Order and the IDOR Order were affirmed.

In light of the District Court Opinions and upon a review of the parties' subsequent filings, the court considers here the extent and validity of the successor liability aspect of IDOR's claims (the "Successor Liability Interest") and the relative priority of such interest as against other claims to the Proceeds (defined below). The court concludes that IDOR has failed to carry its burden in establishing that its Successor Liability Interest has realizable value outside the context of the Sale. Further, under the unique facts of this case, the court concludes that there exists no source of recovery for such Successor Liability Interest, even if the claim had value elsewhere. For these reasons, the court concludes that the remaining aspects of the IDOR Motion not resolved by the court's earlier rulings and affirmed on appeal must be denied. In accord, all the remaining aspects of the UCB Motion not resolved by the court's earlier rulings and affirmed on appeal are, therefore, granted and the Trustee is authorized to pay the remaining Proceeds to Hanmi.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Matters arising under section 363 of the Bankruptcy Code are matters that may only arise in a bankruptcy case and, thus, the bankruptcy court is empowered to enter final orders with respect to the same. *Directional Int'l, Ltd. v. Illinois Bell Tel. Co. (In re Pers. Comp. Network, Inc.)*, 97 B.R. 909, 912 (N.D. Ill. 1989). All parties have consented to this court's entry of a final order adjudicating the Motions and this court's jurisdiction and constitutional authority were not challenged on appeal.

## PROCEDURAL HISTORY

On December 10, 2015, an order of remand from the District Court was entered in this case. That order presumably superseded the District Court's prior remand order dated October 1, 2015.

---

[4] The Proceeds Opinion used different defined terms for these statutes, but for ease of the appeal of this Memorandum Decision that will no doubt follow, the court adopts the District Court's definitions herein.

2

On January 19, 2016, the court conducted a status hearing on the matter after remand. At the conclusion of the status hearing, the court entered a scheduling order for briefing of the Motions in light of the District Court Opinions. *See* Order [Dkt. No. 421] (scheduling further briefing on the UCB Motion) and Order [Dkt. No. 420] (scheduling concurrent, further briefing on the IDOR Motion). That further briefing resulted in the following documents filed in the bankruptcy case:[5]

(1) Supplemental Memorandum of Law of Illinois Department of Revenue Addressing Issues Raised by Remand Order [Dkt. No. 429] (the "IDOR Supplement");

(2) Trustee's Response to Supplemental Memorandum of IDOR Addressing Issues Raised by Remand Order [Dkt. No. 436] (the "Trustee Response");

(3) Supplemental Memorandum of Law of Hanmi Bank Addressing Issues Raised by Remand Order and Response to Supplemental Memorandum of Law of Illinois Department of Revenue [Dkt. No. 438]; and

(4) Illinois Department of Revenue's Response to Supplemental Memoranda of the Trustee and of Hanni [sic] Bank [Dkt. No. 442] (the "IDOR Reply").

The court has reviewed and considered each of the forgoing and has taken into consideration any and all exhibits submitted in conjunction therewith. The court has also considered the arguments of the parties at the January 19, 2016 and May 19, 2016 hearings on the Motions and has reviewed and considered the District Court Opinions.

Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

## BACKGROUND

The full history of this matter prior to remand has been set forth in *Elk Grove*, *Elk Grove I* and *Elk Grove II*. The court assumes familiarity with those opinions and thus provides only the briefest of summaries here.

The matter before the court arises out of the Sale, under which the Trustee sold to the Purchaser substantially all the assets of the Debtors "free and clear of all liens, claims, encumbrances and interests." Order Approving Sale of Gas Stations, ¶ B (dated Nov. 13, 2013) [Dkt. No. 191] (the "Sale Order"). The Sale Order provided adequate protection to all parties whose liens, claims,

---

[5] While, in light of the District Court Opinions, the court anticipated that some or all of the parties might have wished to further develop the factual record through an evidentiary hearing, none of the parties has requested that. In fact, IDOR has expressly stated in both the IDOR Supplement and the IDOR Reply that the "factual matters necessary to determine the dispute have already been determined" and "no discovery or evidentiary hearing is needed." The parties have also made no effort to step through the District Court's methodology for determining value, as is discussed below, and no party provided this court with probabilities or described a likelihood of their alleged nonbankruptcy remedy occurring.

3

encumbrances, or interests were affected by the Sale by providing for "all liens, claims, encumbrances and interests to attach to the proceeds." *Id.*; *see also* Tr. 27, Oct. 29, 2013 ("[I]t's the court's ruling that the language proposed by the debtor adequately protects the interest of the State."). The Sale generated net proceeds totaling $4,991,736.13 with respect to the real property and $237,739.14 with respect to the inventory of the Debtors for a total of $5,229,475.27 (together, the "Proceeds"). *Elk Grove*, 510 B.R. at 598.

The Sale Order was not appealed and is final. After the entry of the Sale Order, however, the court was presented with the UCB Motion and IDOR Motion, each seeking to have all or a portion of the Proceeds remitted to them. The Motions renewed questions raised by way of objection to the Sale as to whether IDOR had an "interest" that is affected by a sale under section 363(f) of the Bankruptcy Code, and if so, whether and to what extent IDOR was entitled to adequate protection of that interest under section 363(e) of the Bankruptcy Code.

The court resolved those Motions in the Proceeds Opinion and the concurrent UCB Order and IDOR Order. The UCB Order and IDOR Order were subsequently appealed, however. On appeal, all but one aspect of the Proceeds Opinion, UCB Order and IDOR Order—discussed below—were affirmed.

The Proceeds Opinion was affirmed with respect to the quantification and allowance of both UCB's and IDOR's claims in the bankruptcy case. UCB was afforded an allowed, secured claim "in the total amount of $14,077,157.67, secured in the proceeds of the Sale." *Id.* at 600 (the "UCB Claim"). The court further concluded that "IDOR has valid liens in the amount of $1,387,418.93 as against the proceeds of the Sale. Otherwise, the IDOR claims are unsecured." *Id.* at 601 (collectively, the "IDOR Claims").

In the Proceeds Opinion, this court found that the IDOR Claims were lower in priority to the UCB Claim, *id.* at 602-03, and that finding was expressly affirmed on appeal. *Elk Grove II*, 2015 WL 8481961, at *3. This court also found that the Sale, free and clear under section 363(f) of the Bankruptcy Code, extinguished IDOR's Successor Liability Interest. *Elk Grove*, 510 B.R. at 598. That finding was not challenged on appeal. *Elk Grove I*, 541 B.R. at 676.

The District Court disagreed, however, with this court's conclusions regarding the value of the unsecured Successor Liability Interest. In the Proceeds Opinion, in considering each respective party's rights to the Proceeds, this court analyzed the relative priorities of the UCB Claim and the IDOR Claims, concluding that because the security interest of IDOR was junior in priority to that of UCB, the IDOR Claims were "out of the money" in their entirety. *Elk Grove*, 510 B.R. at 605.

The District Court affirmed that conclusion with respect to the secured portion of the IDOR Claims, *Elk Grove II*, 2015 WL 8481961 at *3 ("Nothing [] IDOR presents on appeal causes this Court to deviate from this well-reasoned analysis."), but remanded with respect to the value of the unsecured Successor Liability Interest.

## ISSUES ON REMAND

Because of a less than precise use of terminology in the Proceeds Opinion, the question before this court is more difficult to ascertain than it should be.

4

In *Elk Grove I*, the District Court disagreed with this court's conclusion that the Successor Liability Interest was "out of the money." *Elk Grove I*, 541 B.R. at 681 ("IDOR was not 'out of the money.'"). The District Court equated the use of the phrase "out of the money" with a determination by this court that IDOR had no claim at all. It made this interpretation clear when it pointedly stated that IDOR's Successor Liability Interest had "value." *Elk Grove I*, 541 B.R. at 679-80 ("IDOR's statutory right, therefore, has value ..." and "[t]hat is a valuable source of recovery.").

This is not what the court intended to hold, but the District Court is blameless for its interpretation. The fault for any confusion lies with this court. By utilizing a financial phrase not directly applicable to the facts before it, this court was unnecessarily imprecise. To be clear, this court's use of the phrase "out of the money" was intended to state a conclusion that there was no source of recovery for the IDOR Claim, and that as a result, there was no "decrease in the value of such entity's interest in such property." *See, e.g.*, 11 U.S.C. § 361(1) & (2). Put another way, what the court intended to state was that there was no *realizable* value to the IDOR Claim, and thus no adequate protection was due.

What is clear is that there are two different concepts of value at play here. When the District Court states in *Elk Grove I* that the Successor Liability Interest had "value" and that was "not 'out of the money'," the District Court appears to be concluding something other than realizable value. Any other interpretation would be nonsensical, as it would mean the District Court had already prejudged the matter that it has expressly remanded to this court to determine. After all, saying something has value does not mean that the value it has must be something other than zero. *See, e.g.*, *Glidden Co. v. FV Steel & Wire Co.*, 350 B.R. 96, 102 (E.D. Wis. 2006) ("if the court assigns to the claim a value greater than zero ....").

This reading of *Elk Grove I* is supported by the District Court's further statements in *Elk Grove II*, where it suggested that this court will need to address "two unanswered legal and factual issues," as follows:

> [T]he Bankruptcy Court and the parties may need to calculate [] IDOR's dollar recovery had its "interest" in the sold property not been extinguished by Section 363(f). ... [T]he Bankruptcy Court and the parties also may need to address the mechanics of awarding [] IDOR "adequate protection" under Section 363(e).

*Elk Grove II*, 2015 WL 8481961, at *4.

Each of these questions is, in fact, a question of realization of value, something this court had intended to resolve in the Proceeds Opinion. That it did not illustrates the true problem with the Proceeds Opinion, not that this court had concluded that the Successor Liability Interest was valueless (had no realizable value), but that it did so in an imprecise and truncated manner. The Proceeds Opinion fell short in its analysis of this issue and the District Court was correct to ask for more.

For the purposes of this Memorandum Decision, in order to provide more clarity on what is being discussed, the court will use two separate and distinct terms to address these two different concepts. When discussing the value of the Successor Liability Interest without regard to recovery, the court will use the term "calculable value." When discussing that calculable value as viewed through the lens of recovery, the court will use the term "realizable value."

5

DISCUSSION

As noted above, in light of the direction in the District Court Opinions, this court requested supplemental briefing from the parties on both questions. The parties, however, did not focus extensively on the court's greatest concern—the source of recovery for the Successor Liability Interest. Instead the parties focused primarily on the calculable value of the Successor Liability Interest. Despite that, the court will consider each question in turn. Before doing so, however, the court will first take up the limited scope of this court's review on remand.

A.   Scope of Remand

In addressing issues on remand from the District Court, this court is bound by both the mandate rules and the "law of the case" doctrine. *U.S. v. Durham*, 630 F. App'x 634, 635 (7th Cir.), *cert. denied*, 137 S. Ct. 321 (2016).

The mandate rule makes clear that a lower court must "comply with the express or implied rulings of the appellate court" on remand. *Moore v. Anderson*, 222 F.3d 280, 283 (7th Cir. 2000). It does not, however, limit the scope of the lower court's review of other matters. *Creek v. Vill. of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998) (*citing Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)).

That, instead, is limited by the "law of the case" doctrine, which holds that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988); *In re S. Beach Sec., Inc.*, 376 B.R. 881, 888 (Bankr. N.D. Ill. 2007) (Goldgar, J.), *aff'd*, 421 B.R. 456 (N.D. Ill. 2009), *aff'd*, 606 F.3d 366 (7th Cir. 2010). Arguments raised before and rejected by an appellate court may not be taken up by the trial court on remand. *Durham*, 630 F. App'x at 635 (citing to both principles in declining to rehear a previously rejected argument); *Tucker v. United States*, Case No. 09-CR-131, 2016 WL 6637957, at *7 (E.D. Wis. Nov. 9, 2016) ("Since the court of appeals has already addressed and rejected those issues …, the law of the case bars him from raising these issues again.").

One issue that does not appear to be within the scope of this court's determination on remand, either by way of the mandate rule, the "law of the case" doctrine or the fact that none of the parties has directly challenged the issue,[6] it does not appear to be within this court's scope on remand to assess whether IDOR has run afoul of the principles of federal preemption in seeking to actively tax transactions that occur within bankruptcy that would not face taxation outside of bankruptcy.[7]

---

[6]   While the Trustee and Hanmi Bank/UCB have made reference to this issue by way of criticizing IDOR's change in position, *see* fn.7 *infra* (noting the original position was that the state law was preempted by bankruptcy), it appears that no party has expressly challenged the validity of this scheme before this court or the District Court.

[7]   While standing alone, the Bulk Sales Acts do not appear to run afoul of the mandates of the Bankruptcy Code, the State of Illinois is applying these laws in a manner that appears discriminatory. In that regard, IDOR's general information letters and private letter rulings make clear that IDOR does not apply successor liability for Bulk Sales Act taxes when foreclosure sales are conducted in Illinois state

B.  <u>Burden of Proof</u>

In the Proceeds Opinion, this court did not address the parties' applicable burdens. That issue was also not addressed on appeal in the District Court Opinions, but bears consideration here.

Section 363 states, in pertinent part, that "[i]n any hearing under this section—(1) the trustee has the burden of proof on the issue of adequate protection; and (2) the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. § 363(p).

The first part of section 363(p)(1) has already been established, and IDOR has already been afforded the adequate protection that is due. As noted above, the Sale Order provided adequate protection to all parties whose liens, claims, encumbrances, or interests were affected by the Sale by providing for "all liens, claims, encumbrances and interests to attach to the proceeds." Sale Order, ¶ B. This provision of adequate protection is exactly what was contemplated by Congress in such matters, when it stated that "[m]ost often, adequate protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale." H.R. Rep. No. 595, 95th Cong., 1st Sess. 345 (1977), S. Rep. No. 95–989, 95th Cong., 2d Sess. 56 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6302; *see also* 3 Collier on Bankruptcy ¶ 363.06[9] at pp. 363–58 (16th ed. 2013). Courts who have considered this have concurred that by attaching the interests to the proceeds in this manner, the bankruptcy court has provided adequate protection. *Wilmington Trust, N.A. v. Boh Park Highlands NV, L.P. (In re Nov. 2005 Land Inv'rs, LLC)*, 636 F. App'x 723, 726 (9th Cir. 2016); *Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.)*, 600 F.3d 231, 257 (2d Cir. 2010) (finding that such was "squarely within the letter and purpose" of adequate protection). As much as the attachment of interests to the Proceeds provided adequate protection to IDOR, it also provided adequate protection to UCB and to the other parties that were consenting to the Sale, which also removed their interests from the Debtors' assets along with IDOR's interests.

As previously noted, the Sale Order was not appealed and is final. The Sale Order afforded IDOR adequate protection by its express terms in accordance with the case law and legislative history governing section 363(e). Thus, the Trustee's burden under section 363(p)(1) has long since been satisfied and this is no longer a question of adequate protection.

What remains is the issue of the validity, priority, or extent of the interests in question as they relate to the Proceeds. This is not a determination of adequate protection in and of itself, but,

---

courts. IDOR Letter, No. 11-0096, 2011 WL 7014975, at *4 (Dec. 7, 2011) (applying Ill. Adm. Code § 130.170(g)(3)). The same position was once taken by IDOR with respect to bankruptcy, IDOR Letter, No. 01-0066, 2001 WL 416722, at *2 (Mar. 30, 2001) ("[I]t is the position of the Department that a sale of debtor assets conducted under the auspices of a bankruptcy court is not subject to the bulk sales reporting requirements of the Retailers' Occupation Tax Act. We believe *the Bankruptcy Code preempts the bulk sales provisions* of the Retailers' Occupation Tax Act.") (emphasis added), but as this case demonstrates, that is no longer IDOR's position. IDOR has been repeatedly attempting to collect this tax in relation to bankruptcy sales. *See, e.g., In re Vista Mktg. Grp. Ltd.*, Case No. 12-B-83168, 2014 WL 1330112 (Bankr. N.D. Ill. Mar. 28, 2014) (Lynch, J.); *BMO Harris Bank, N.A. v. Vista Mktg. Grp., Ltd. (In re Vista Mktg. Grp. Ltd.)*, 548 B.R. 502 (Bankr. N.D. Ill. 2016) (Lynch, J.); *In re Naperville Theater, LLC*, Case No. 15 C 3697, 2016 WL 930659 (N.D. Ill. Mar. 10, 2016). The Sale, had it been authorized by an Illinois state court, would not have given rise to the successor liability question. But because it was conducted in a federal court, it has. That is problematic at best.

as is contemplated in section 363(p)(2), is something that must be determined appurtenant thereto. *Accord Nov. 2005 Land Inv'rs, LLC*, 636 F. App'x at 725.

As noted above, the court in the Proceeds Opinion has already determined the amounts and validity of the UCB Claim and IDOR Claims, and that determination was not disturbed on appeal. The court has also already determined that UCB's liens are senior in priority to IDOR's liens. Again, that determination was not affected by the appeal.

The extent and validity of the Successor Liability Interest is a burden that falls squarely on IDOR under section 363(p)(2). As to the priority in the Proceeds of the Successor Liability Interest as against the UCB Claim, each of IDOR and Hanmi Bank bear that burden equally as each is an "entity asserting an interest" under section 363(p)(2). Consistent with that shared burden and for the reasons clearly stated by the Supreme Court regarding litigation in civil matters in bankruptcy, that burden is by the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

C.　<u>Calculable Value of the Successor Liability Interest</u>

In the Proceeds Opinion, this court concluded that "IDOR has valid liens in the amount of $1,387,418.93 as against the proceeds of the Sale. Otherwise, the IDOR claims are unsecured." *Elk Grove*, 510 B.R. at 601. The court did not specify the amount of the IDOR Claims which was unsecured or the amount relating to transfer liability.

Under the Bulk Sales Acts, successor liability is limited to the reasonable value of the property transferred. *See* Illinois Income Tax Act, 35 ILCS 5/902(d) ("the reasonable value of the property acquired"); Retailers' Occupation Tax Act, 35 ILCS 120/5j ("the reasonable value of such property").

IDOR and Hanmi Bank differ on whether in determining reasonable value this court should take into consideration the existence and amount of the UCB's liens.[8] IDOR's position is that it should not; that the reasonable value of the transferred property is the price paid by the Purchaser for the assets. Applying that price to the individual taxes owed, IDOR calculates the value of the Successor Liability Interest to be $1,535,589.04.[9] Hanmi Bank, on the other hand, argues that the reasonable value should be calculated net of UCB's liens, and should therefore be zero.

None of the parties has cited case law on point, and the court has been unable to independently discover any such law. Given, however, the way this court has formulated the issue (intrinsic value versus realizable value), the court finds that IDOR's is the better position. As the value of UCB's liens will be considered in determining realizable value, to consider it here would be double-counting. As a result, the court adopts IDOR's calculations and finds that IDOR has met its burden to show that the calculable value of the Successor Liability Interest is $1,535,589.04.

---

[8]　The Trustee focuses his arguments on realizable value, but in so doing also argues that the IDOR Claims were subordinate to UCB's liens. Otherwise the Trustee introduces no new factors here and does not advance the argument beyond the issues raised by IDOR and Hanmi Bank.

[9]　Though IDOR opposes netting the UCB liens, it does, however, use the net sale Proceeds (not the purchase price of $5,800,000.00) in making this calculation. IDOR does not explain this discrepancy.

8

D.  Realizable Value of the Successor Liability Interest

A determination of the realizable value of the Successor Liability Interest is in fact a determination of what recovery would be available to IDOR had its "interest" not been extinguished by section 363(f)—the first of the two questions posed by the District Court in *Elk Grove II*. This is the second half of determining the extent and validity of the Successor Liability Interest. It is IDOR that bears the burden of proof with respect to this determination. 11 U.S.C. § 363(p)(2) (each party bears the burden of proof with respect to the validity, priority, or extent of its claimed interest).

There are, of course, any number of possibilities as to what might have happened to the Debtors and their assets had the bankruptcy and bankruptcy sale not taken place. The Debtors might have returned to profitability and paid the IDOR Claims. In turn, the Debtors might have liquidated without any bulk transfers. UCB might have repossessed and foreclosed under state law. Higher priority liens might have arisen. The possibilities become more and more attenuated. That has not stopped the parties from arguing several of them.

The court understands the question to be much simpler: What would IDOR's recovery be if the Sale had taken place without the invocation of section 363(f) to extinguish IDOR's interest? This is, in fact, what the District Court asked. *Elk Grove II*, 2015 WL 8481961, at *4

In that regard, the District Court hypothesized a sale as follows:

> * the debtor was in bankruptcy for owing $150 to a creditor bank;
> * pursuant to Section 363 of the Bankruptcy Code, the debtor's assets were sold for $100;
> * the purchaser had net assets worth $200 after purchasing the debtor's assets;
> * the debtor had outstanding state tax liabilities in the amount of $25;
> * the purchaser paid $75 to the bankruptcy trustee and withheld $25 in response to the IDOR issuing a stop order pursuant to the Bulk Sales Acts;
> * Section 363(f) did not extinguish the IDOR's right under the Bulk Sales Acts to pursue the purchaser for the debtor's outstanding tax liabilities; and
> * the creditor bank had a superior claim than the IDOR for the $25 the purchaser withheld.
>
> In this example, the purchaser would remit the withheld $25 to the creditor bank and not the IDOR because the creditor bank held a superior claim to the sales proceeds and despite the IDOR's demand. … The Bulk Sales Acts empower the IDOR to hold the purchaser personally liable up to the value of the assets purchased ($100 in this example) and recover the unpaid taxes from the purchaser's personal assets (worth $200 in this example) which are not subject to any claim by the creditor bank.

*Elk Grove I*, 541 B.R. at 680.

This is helpful, but it critically assumes that the sale proceeds would pay in full the secured creditor bank's superior claim or, perhaps, the secured creditor bank consented to its lien being

9

stripped without adequate protection. The former is not applicable on the facts here and the latter is pure speculation.

Having not considered UCB's liens in determining the calculable value of the Successor Liability Interest, the court must consider them here. To assume them away, as IDOR would have the court do, would be to presume a recovery for IDOR that is completely different from the facts at bar. That is mere speculation, and a party may not carry its burdens by speculation. "[A] finding may not rest on guess or speculation." *Locklin v. Day-Glo Color Corp.*, 429 F.2d 873, 879 (7th Cir. 1970) (*citing to Bigelow v. R.K.O. Radio Pictures, Inc.*, 327 U.S. 251 (1946)). And here, it is worth remembering that it is IDOR that bears the burden.

That is not to say that the court cannot permit a certain degree of speculation in this regard. That is, after all, something bankruptcy courts do all the time in valuing contingent and unliquidated claims. *See, e.g.*, 11 U.S.C. § 502(c)(1). As has been stated, a bankruptcy court "has broad discretion when estimating the value of an unliquidated claim." *Ryan v. Loui (In re Corey)*, 892 F.2d 829, 834 (9th Cir. 1989) (*citing to Addison v. Langston (In re Brints Cotton Mktg., Inc.)*, 737 F.2d 1338, 1341 (5th Cir. 1984); *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 136 (3d Cir. 1982)). The District Court itself made that clear when it stated that it "can reverse a bankruptcy court's decision on the method for ascertaining the value of claims only when it is so fundamentally wrong that no reasonable person could agree with it." *Beatrice Co. v. Rusty Jones, Inc.*, 153 B.R. 535, 536 (N.D. Ill. 1993) (*citing to Libby v. Illinois High School Ass'n*, 921 F.2d 96 (7th Cir. 1990)). In this case, if the court could not entertain speculation to a degree, it could not perform the calculation in the matter requested by the District Court. But the District Court discarded the parties' pure speculation, and this court must do the same. *Elk Grove I*, 541 B.R. at 681 (discarding "anecdotal commentary and speculation").

The only reasonable way to consider IDOR's recovery had its interest not been extinguished is likewise to presume that UCB's liens were not extinguished. Using the District Court's formulation, that results in the following hypothetical calculation:

- The Debtors are in bankruptcy and owe $14,077,157.67 to UCB (the UCB Claim);
- Pursuant to Section 363 of the Bankruptcy Code, the Debtors' assets were sold to the Purchaser for $5,229,475.27 (the Proceeds);[10]
- The Purchaser had net assets worth $5,229,475.27 after purchasing the Debtors' assets;[11]

---

[10] Because none of the parties chose to illustrate their arguments in the manner given by the District Court, none of the parties has taken a position whether this calculation should use the gross or net purchase price. Because IDOR has acceded to the use of the Proceeds (the net purchase price) in determining the calculable value of the Successor Liability Interest, the court therefore uses that number here for consistency.

[11] IDOR, as the party bearing the burden here, has failed to show that the Purchaser would have had assets other than those purchased. While it makes reference in the IDOR Reply to the Purchaser being the designee of "Atlas Oil" (supported by at least one filing in the bankruptcy case that the court was able to locate), IDOR provides no evidence or argument as to how that fact might be proven. Taken a step further, even if it could be proven, IDOR fails to explain how it would result in the Purchaser having assets other than those purchased. In making that observation, IDOR appears in fact to admit that the Purchaser was, as the Trustee alleges in the Trustee Response, a special purpose entity formed and funded solely for the purpose of acquiring the Debtor's assets. IDOR has given the court no reason to conclude that the Purchaser had any assets other than those acquired.

10

- The Debtors had outstanding tax liabilities to IDOR in the amount of $1,881,648.60 (the amount of the IDOR Claims);[12]
- The Purchaser paid $3,347,826.67 to the bankruptcy trustee and withheld $1,881,648.60 in response to IDOR issuing a stop order pursuant to the Bulk Sales Acts;
- Section 363(f) did not extinguish IDOR's right under the Bulk Sales Acts to pursue the Purchaser for the debtor's outstanding tax liabilities; and
- UCB has a superior claim to that of IDOR for the $1,881,648.60 that the Purchaser withheld.

Continuing to follow the District Court's analysis, in this case, the Purchaser would have remitted the withheld $1,881,648.60 to UCB and not, despite IDOR's demand, to IDOR because UCB held a superior claim to the Proceeds. While IDOR would still have recourse, so would UCB. The Bulk Sales Acts would empower IDOR to hold the Purchaser personally liable up to the value of the assets purchased and recover the unpaid taxes from the Purchaser's personal assets (worth $5,229,475.27).

IDOR's right, however, would continue to be subordinate to UCB's liens, which would remain in the assets purchased. After receipt of the entire purchase price, UCB would still be owed $8,847,682.40 ($14,077,157.67 minus the $5,229,475.27 paid). UCB's liens would still exceed the value of the assets by $3,618,207.13.[13] In attempting to collect on the IDOR Claims, IDOR would be faced with a senior secured creditor with rights in all the assets of the Purchaser and income generated therefrom. Nothing argued by IDOR overcomes this fact. It has not pointed to an independent source of recovery or assets nor provided any theory how, under these circumstances, either IDOR's lien or the *in personam* Successor Liability Interest would ever be realized.[14]

As such, the court is forced to conclude that IDOR has failed to carry the burden placed on it by section 363(p)(2). Utilizing the District Court's methodology, it is clear that the IDOR Claims, including the Successor Liability Interest, have no realizable value.

E. Recovery

By concluding the foregoing, it becomes unnecessary for the court to analyze the sources of recovery for the Successor Liability Interest, what the District Court described as the "the mechanics

---

[12] The court is aware that this is the total amount of the IDOR Claims, not the calculable value of the Successor Liability Interest portion determined above. However, the District Court's methodology asks that the court determine the realizable value had section 363(f) not applied. The court presumes, therefore, that is section 363(f) had no effect, all of the IDOR Claims would remain.

[13] Imbedded in this analysis is a potentially false assumption in favor of IDOR; that the sale price would still have be $5,800,000.00 had the UCB liens not been stripped. That most certainly would not be the case, as the retention of liens would have generated a lower sales price due to the increased liability encumbering the Debtors' assets.

[14] The court could speculate as to a return to profitability of the Debtors in the future that might be enough to pay the remaining UCB liens and any additionally accrued interest, charges, etc., relating thereto, but this, again, puts the court in the position of pure speculation—something that IDOR has provided the court with no assistance with.

11

of awarding [] IDOR 'adequate protection' under Section 363(e)." *Elk Grove II*, 2015 WL 8481961, at *4.

Several observations are nonetheless worth making in this regard.

First, as has been noted above, this is not a question of awarding IDOR adequate protection. IDOR has already received that by way of the Sale Order's retention of interests in the Proceeds.[15] This is a question of the *priority* of competing interests in the Proceeds.

Second, by accepting the Sale Order's retention of interests as adequate protection, IDOR removed from consideration other potential forms of adequate protection that this court might have otherwise considered. *See, e.g.*, 11 U.S.C. § 361. The Sale Order afforded IDOR with the adequate protection to which it acceded, an undivided interest in the Proceeds. While IDOR is clearly asking that the Proceeds be divided in its favor, in determining how the competing interests in the Proceeds are to be prioritized, nothing authorizes the court to step outside the confines of the Bankruptcy Code, which contains an express system under which the priority of claims are determined. That system, in fact, has mechanisms under which unsecured claims might step ahead of secured ones, *see, e.g.*, 11 U.S.C. §§ 506(c), 510(c)(1), but IDOR has made no attempt to invoke those mechanisms here. IDOR cannot argue that, having received an undivided interest in the Proceeds as adequate protection, it may then demand those Proceeds over other competing interests because it is entitled to adequate protection. Adequate protection does not apply iteratively. Once a party has received adequate protection (as IDOR has here), what remains must be determined under the confines of the rest of the Bankruptcy Code.

IDOR was not required to accept this form of adequate protection. Section 363 itself expressly includes the ability to prohibit a sale when adequate protection is owed. 11 U.S.C. § 363(e). Parties are free to argue for that remedy, and the court would expect them to do so if proposed adequate protection appeared insufficient. Further, a party might argue that it could only be adequately protected by a sale being conducted without the protections of 363(f).

IDOR in fact argued that the motion to approve the Sale should be denied unless specific language protecting its interests was included in the Sale Order. *See* Limited Objection to Motion To Approve Sale of Gas Stations, ¶ 8 and p. 3 [Dkt. No. 173]. IDOR was apparently concerned about the effect of *Hoornstra v. United States*, 969 F.2d 530 (7th Cir. 1992). *Id.* at ¶ 7. That was a case where the IRS had sought moneys held in escrow under the Bulk Sales Acts, and the Seventh Circuit had concluded that the specific escrow language favored IDOR.

IDOR sought language protecting it from *Hoornstra* disputes here and was denied. In so doing, this court stated "my concern is in listening to your proposed language ... [that] it may give you more than what you are asking for. In other words, it may bootstrap you into the very claim you are trying to assert." Tr. 25, Oct. 29, 2013. Instead, the court made clear that all it was required

---

[15] This is another instance where this court's shorthand in the Proceeds Opinion has caused issues. While the court discussed the priority of the IDOR Claims, it did so in the context of providing adequate protection to IDOR. That is precisely contrary to the clear language of section 362(p), which differentiates between adequate protection and priority of claims. The District Court is nonetheless correct when stating that this is a question of mechanics. If anything, it is a question of the mechanics of realizing the adequate protection that was provided. Those mechanics are dependent upon the priority of the IDOR Claims.

to do was ensure that "the funds be held and that interests be preserved." *Id.* That exchange made very clear that the validity, priority and extent of the IDOR Claims was not being established by the Sale Order. Had IDOR wanted the Sale stopped or not to be subjected to the very analysis set forth herein, it could have fought for different remedies or appealed the Sale Order. It did not. Instead, it allowed this case to proceed to a point where the only remedy that can be afforded to IDOR is a recovery out of the Proceeds.[16]

Nothing in the Sale Order ensured IDOR a recovery on the preserved interests in the Proceeds. They must still be weighed against the priorities of all parties whose interests were also preserved; in this case, the priority of the UCB liens that were also attached to the Proceeds. By arguing that the court must permit IDOR a recovery on the preserved interests above that afforded UCB, IDOR attempts to use sections 361 and 363(e) to afford the IDOR Claims a step up in priority. In so doing, IDOR both ignores the clear division between adequate protection under section 363(p)(1) and claim priority set forth in section 363(p)(2) and argues again for the adequate protection it has already received. IDOR also ignores the plain language of *Elk Grove II*, where the District Court stated that "[n]othing this Court decided, however, disrupts the priority scheme laid out by Section 507 of the Bankruptcy Code. This Court did not elevate the priority of any claim [] IDOR may have had under 11 U.S.C. § 507(a)(8)." *Elk Grove II*, 2015 WL 8481961, at *3.

Had Congress wanted to upset the Bankruptcy Code priority schemes in this respect, it could have done so. But nothing in sections 361 or 363(e) has that effect. Had the court found realizable value for the Successor Liability Interest outside of bankruptcy, the court would nonetheless be forced to conclude that, under the facts of this case, IDOR has identified no bankruptcy source of recovery for the same.

## CONCLUSION

For the foregoing reasons, the court concludes that the remaining aspects of the IDOR Motion not resolved by the court's earlier rulings and affirmed on appeal must be denied. In accord, all the remaining aspects of the UCB Motion not resolved by the court's earlier rulings and affirmed

---

[16] Or so the court presumes. Again, IDOR has requested no other remedy and has done nothing to show that it is entitled to any other remedy. IDOR already has its claim against the bankruptcy estate for the IDOR Claims – an unsecured claim in the amount of $1,881,648.60. *Elk Grove*, 510 B.R. at 600-01. IDOR is not entitled to double recovery on account of the amounts owed to it but might have argued nonetheless for some other form of recovery. The District Court was apparently cognizant of this fact, stating that this court must also focus on "the relative priority between [Hanmi Bank]'s liens and the IDOR's right to 'adequate protection,' *and from what assets the Trustee will make any 'adequate protection' payment to the IDOR.*" *Elk Grove II*, 2015 WL 8481961, at *4 (emphasis added). IDOR has asked for nothing other than a portion of the Proceeds and that, therefore, is the limit of the court's consideration.

on appeal are, therefore, granted and the Trustee is authorized to pay the remaining Proceeds to Hanmi. Separate orders to that effect will be issued concurrent with this Memorandum Decision.

Dated: December 15, 2016

ENTERED:

Timothy A. Barnes
United States Bankruptcy Judge